## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ZENA SADIK,

     *Plaintiff*,

*v.*                          CASE NO. 13-CV-13882

COMMISSIONER OF          DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 13) be **DENIED**, that Defendant's Motion for Summary Judgment (doc. 15) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 13, 15.)

_____

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for a period of disability and DIB on March 7, 2011, alleging that she became unable to work on December 15, 2010. (Transcript, Doc. 9 at 18, 91-92.) The claims were denied at the initial administrative stages. (Tr. 61.) On December 9, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") John Dodson, who considered the application for benefits *de novo*. (Tr. 18, 32.) In a decision dated February 8, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 15, 2010 through the date of the ALJ's decision. (Tr. 24.) Plaintiff requested Appeals Council review of this decision. (Tr. 12-14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 10, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 5-7.) On September 11, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

## B. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not

the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.    Governing Law

Disability for purposes of DIB is defined as the:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. § 404.1520. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with

approval in *Cruse*, 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through September 30, 2015, and had not engaged in substantial gainful activity since December 15, 2010. (Tr. 20.) At step two, the ALJ found that Plaintiff's retinal detachments and defects and type-2 insulin dependent diabetes mellitus with retinopathy were "severe" within the meaning of the second sequential step. (Tr. 20.) The ALJ found that Plaintiff's adjustment disorder with depressed mood was a non-severe impairment. (Tr. 20.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 21.) The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light[3] work limited to

---

[3]

      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

no use of ladders, ropes or scaffolds, no concentrated exposure to hazards such as heights and machinery, work where stereoscopic vision is not essential, a work environment where lighting is no more extreme than an office setting, and there can be no shifting terrain and no production-like standards such as one might find on an assembly line or conveyor belt. (*Id*.) At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a data entry clerk and therefore she was not suffering from a disability under the Social Security Act. (Tr. 23.)

### E.   Administrative Record

Plaintiff was 58 years old at the time of the hearing. (Tr. 35) She lives in a house with her adult son. (Tr. 42.) Plaintiff has past work in data entry and as a machine operator and at the time of the hearing, she was working four hours per week at McDonald's. (Tr. 35, 36.) She testified that was attending community college and working towards an IT and business professional degree. (Tr. 36.) She was taking four classes totaling fifteen hours per week. (*Id.*) She testified that she was not passing one of her classes. (Tr. 36.) She did not believe she was going to be able to obtain the degree because her eyes hurt and become blurry when she spends too much time on the computer or reading. (Tr. 44.) She testified that her eyesight has gotten worse and when her eyes hurt from use, she naps to rest them. (Tr. 36-37.)

Plaintiff testified that she is being treated for glaucoma and macular degeneration and the glaucoma medication makes her eyes sensitive to bright light and sunlight. (Tr. 38.) She testified that the left eye is worse than the right. (Tr. 46.) She described having blurred vision which is a problem in class, and she cannot use her peripheral vision, which creates a problem seeing curbs, bumps and steps. (Tr. 38.) She testified that because of the vision problems, it takes her longer to perform tasks at McDonald's, for example, seeing money and the screen. (Tr. 39.) Plaintiff

testified that she drives to school and work, approximately six miles, and they are places with which she is familiar. (Tr. 39.)

Plaintiff testified that she has carpal tunnel syndrome and her hands hurt, she has a "trigger finger," it is difficult to lift one of her shoulders, her legs and feet hurt and she cannot sleep at night, which makes it difficult to stand for very long and difficult to function the following day. (Tr. 45.)  Plaintiff explained that at night she does not sleep because her legs cramp and her feet hurt due to her diabetes. (Tr. 40.) She testified that she has numbness and tingling in her feet and she is able to stand for about an hour and walk for about ten minutes before she needs to sit or rest. (Tr. 40-41.) She testified that she could lift "three, maybe five pounds" before her back, legs, shoulders and hands would bother her. (Tr. 41.) She is able to cook and do some of the cleaning in her house. (Tr. 42.)

She explained that she does not have insurance so she goes to a free clinic to get help with her insulin. (Tr. 41.) Plaintiff described trouble concentrating and keeping things "in order." (Tr. 44.) She writes things down to remember them. (Tr. 44.) Plaintiff testified that her last job as a machine operator ended when the business closed. (Tr. 41-42.) She testified that she would not be able to perform that job now because she would not be able to see the parts or stand long enough. (Tr. 42.)

The medical records show that Plaintiff received medical treatment prior to the December 2010 alleged onset date. The record shows eye examinations as far back as October 2006, when visual acuity was reported as 20/30 for the right eye and 20/50 for the left eye. (Tr. 173.) In 2009 it was noted that her blood sugar level was unstable. (Tr. 173.) In 2009 she also underwent a right terminal duct excision for which cancer testing was negative. (Tr. 176-77.)

August 8, 2009 medical records show that Plaintiff reported having been laid off a few months prior from an automotive company. (Tr. 184.) On examination, blood sugar was elevated. (Tr. 184.) Plaintiff was diagnosed with diabetes mellitus and hypertension. (Tr. 184.) At an examination in November 2009 Plaintiff reported feeling good. At that time she was prescribed glipizide, metformin, lisinopril, Zocor and aspirin. (Tr. 193.)

Plaintiff underwent a consultative eye examination on May 9, 2011, with John C. Poggiolo, O.D. (Tr. 197-99.) At the examination Plaintiff reported that her last eye exam was about two and a half years prior. (Tr. 197.) On examination her best corrected visual acuity at a distance was 20/30 with the right eye, 20/50 with the left eye, and 20/30 with both. (Tr. 197.) Her best corrected visual acuity for near distances was again 20/30 with the right eye, 20/50 with the left eye and 20/30 with both. (Tr. 197.) The doctor diagnosed "[d]iabetes [m]ellitus with moderate non-proliferative diabetic retinopathy" with possible clinically significant macular edema (CSME) in the left eye greater than in the right. (Tr. 198.)  He concluded the following:

> In summary, Mrs. Sadik has some central vision loss secondary to her cataracts and diabetic retinopathy in both eyes. Cataract surgery is an option for both eyes; however, Mrs. Sadik should be seen on a regular basis by a retinal specialist to help control her diabetic retinopathy. Also, Mrs. Sadik also (sic) should be seen on a regular basis by a general physician to improve blood sugar levels.
>
> Otherwise, Mrs. Sadik should be seen on a regular basis by an eye care provider to monitor her vision, ocular health, and best spectacle lens prescription. I also recommend polycarbonate lenses in this case to protect her eyes. (Tr. 198-99.)

On May 20, 2011, Plaintiff underwent a mental status examination with Julia A. Czarnecki, M.A., L.L.P., and Nick Boneff, Ph.D., Licensed Psychologist. (Tr. 202-04.) The report notes that Plaintiff works one day per week for 4 to 8 hours and she drives, but only short familiar distances and not at night. (Tr. 203.) It was noted that Plaintiff prepares her own meals, can perform her hygiene and grooming, and attends weekend church services. (Tr. 203.) The examiner reported that

Plaintiff was "generally composed and appropriate . . . although she became very tearful when describing her difficulty reading her homework now due to impaired vision." (Tr. 203.) The doctor opined that Plaintiff presented with "symptoms of an adjustment reaction secondary to dealing with acceptance of her worsening vision from macular degeneration," yet noted that

> There are no significant psychiatric symptoms, depression or disturbance of thought, impaired concentration or attention that would affect her ability to do work related activities at a sustained pace. She is currently a full time student in college still working part time on top of her school and is independent with her ADLs. (Tr. 204.)

The doctor diagnosed adjustment disorder with disturbance of mood. (Tr. 204.)

In July and September 2011 Plaintiff again attended examinations with Jesse Cardellio, D.O., for her eyes. (Tr. 216.) Impressions noted included glaucoma and eyestrain in both eyes. (Tr. 216.) July 23, 2011 examination notes from Neighbors Caring for Neighbors Clinic show that Plaintiff complained of "blurred vision X 6 mos" and her last eye exam had been two years ago. (Tr. 225.) In August 2011, it was noted that Plaintiff was diagnosed with glaucoma and left eye macular degeneration. (Tr. 219.) Notes from the same month show that Plaintiff presented with concerns about her increased blood sugar levels and was "eating sweetened cereals, french fries, sausage patties, (sic) stated she is following diet." (Tr. 223.) September 7, 2011 examination notes state that due to eye problems, Plaintiff was given a magnifier to aid in her insulin administration. (Tr. 218.)  It was noted that Plaintiff was able to draw her insulin correctly at bedtime each night. (Tr. 218.) It was also noted that Plaintiff stated that she tries to read labels and choose healthier foods. (*Id.*)

The vocational expert ("VE") testified that Plaintiff has past work as a data entry clerk, which is semi-skilled and sedentary in exertional level, and a plastic injection mold machine tender, unskilled and light in exertional level. (Tr. 47.) At the hearing, the ALJ asked the VE to

consider an individual of the Plaintiff's age, education and past work experience who is capable of performing light work but:

> [T]here could be no ropes, ladders or scaffolds, no concentrated exposure to hazards, such as heights and machinery. This could be work that would not - - working with stereoscopic vision would not be essential. Work in a setting where the lighting is no more extreme than that of an office setting. Can be no shifting terrain and no production-like standards, such as one might find in a conveyor belt or an assembly line. (Tr. 47.)

The VE testified that such an individual could perform Plaintiff's past work in data entry. (Tr. 48.) The VE also testified that such an individual could perform approximately 6,000 assembly jobs and approximately 4,000 packaging jobs in the region, and the number of available jobs statewide would be double that number. (Tr. 48.)

Plaintiff's counsel then asked the VE, "If she was not able to perform a job that required her to be on the computer for a good portion of the day because of her vision problems, would she be able to perform her past relevant work?" (Tr. 48.) The VE responded, "No." (Tr. 48.) Upon further questioning the VE testified that with such a restriction she would not be able to perform most clerical jobs. (Tr. 48.) The VE agreed that his testimony had been consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 50-51.)

### F.    Analysis

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) Plaintiff argues that the ALJ made an erroneous credibility determination, his RFC is not supported by substantial evidence and his finding at step four, that Plaintiff may perform her past work as a data entry clerk, is not supported by substantial evidence.

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial

evidence supports a different conclusion. *McClanahan,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen,* 800 F.2d at 545. The Court has reviewed the record in full and substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC to perform her past work as a data entry clerk. The medical evidence as a whole did not provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from her impairments, including medications or pain.

1.     **Whether the ALJ's Credibility Finding is Supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in failing to find her eye-related complaints credible. Plaintiff alleges that her "eyes become tired and painful after straining and attempting to use them for any extended period of time," "when she uses them to focus, they start to hurt her, and she is eventually forced to close and rest them," her vision has progressively decreased in sharpness and has "eliminated most of her peripheral vision," and her glaucoma medication causes severe light sensitivity. (Doc. 13 at 9, 10.)  She argues that, as a result, she "would be unable to perform work that requires her to focus her eyes and to concentrate on a visual task." (Doc. 13 at 10.)

Contrary to Plaintiff's argument, the ALJ gave very specific reasons for discounting Plaintiff's testimony about the intensity, duration and limiting effects of her symptoms. As required by the Regulations, the ALJ fully explained his credibility determination with respect to Plaintiff's symptoms. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-4p and 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's

statements. *See id.*; SSR 96-7p. To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also Felisky*, 35 F.3d at 1039-41. The regulations set forth the kinds of evidence and factors that must be considered in assessing the credibility of an individual's statements about symptoms and their effects, including the following: daily activities, location, duration, frequency and intensity of pain or other symptoms, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications taken to alleviate pain or other symptoms, treatment other than medication for symptom relief, any other measures used for symptom relief, and any other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

The ALJ considered all the evidence of record in determining the credibility of Plaintiff's statements about the limiting effects of her symptoms. In his decision, the ALJ considered Plaintiff's testimony regarding her sight. (Tr. 22.) While the ALJ noted Plaintiff's reports of eye fatigue and the need to nap, the ALJ also cited activities of daily living that showed fewer limitations than the symptoms alleged by Plaintiff. (Tr. 22.) For example, Plaintiff reported working four hours per week at McDonald's and taking four classes per week at community college. (Tr. 22, 36.) At the psychological consultative examination, Plaintiff reported that she worked one day a week at McDonald's with a shift lasting 4-8 hours, was a full time student at a community college and does her school work at home at night. (Tr. 202-03.) Despite Plaintiff's

complaints that she has difficulty seeing to do her school work and McDonald's work, she has been able to maintain both. The ALJ mentioned Plaintiff's testimony that she may not receive her degree and she is not passing one of her classes, yet she continued to attend school and she was able to maintain the remainder of the classes and a one day per week work schedule. (Tr. 22, 202-03.) The ALJ also considered medical records from Neighbors Clinic that show additional daily activities that require vision and do not support disabling limitations of vision. (Tr. 23.) For example, Plaintiff is able to draw and administer her insulin correctly, and was reading food labels in an attempt to make healthier eating choices. (Tr. 23.)

The ALJ considered the frequency of Plaintiff's medical treatment. The ALJ acknowledged that Plaintiff had a period of time in which she did not have health care and Plaintiff testified at the hearing that she had been without health insurance. (Tr. 23, 41.) However, the ALJ also pointed out that Plaintiff only infrequently treated with the ophthalmologist. (Tr. 23.) While cataract surgery was recommended, it was repeatedly noted that Plaintiff's blood sugar levels were regularly high or unstable. (Tr. 23, 173, 198, 219, 221, 223, 225.) Further, the ALJ considered the relatively routine nature of the recommended treatment. (Tr. 23.) She was urged on two occasions to obtain prescriptive lenses. (Tr. 23, 198, 216.) When Plaintiff treated at Neighbors Clinic on July 23, 2011, she complained of blurred vision starting approximately six months prior. (Tr. 23, 41, 225.) As the ALJ pointed out, by October 2011, after several months of treatment at Neighbors Clinic, Plaintiff reported "feeling OK" and had increased her exercise. (Tr. 217.)

Although, as the ALJ pointed out, the record shows some central vision loss due to cataracts, the medical evidence also shows that Plaintiff's best corrected visual acuity on May 9, 2011, for both near and far was 20/30- for the right eye and 20/50- for the left eye; this is little changed from 2006 and 2009 examinations, at which time Plaintiff was still working and

13

completing work-related tasks. (Tr. 23, 173, 197.)  At the May 2011 examination, despite the notation that Plaintiff had "some central vision loss,"  visual acuity for both eyes was 20/30-. (Tr. 197.)

The ALJ's credibility finding was properly explained with reference to specific evidence of record and is supported by substantial evidence in the record. The ALJ fully explained his credibility determination, considered a range of record evidence and his determination is supported by substantial evidence in the record.

## 2.    Whether the ALJ's RFC is Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC does not include all of Plaintiff's exertional and non-exertional limitations. (Doc. 13 at 11.) Specifically, Plaintiff argues that the RFC "fails to adequately account for Plaintiff's visual limitations."[4] (Doc. 13 at 11.) In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  As set forth above, the ALJ's credibility determination is

---

[4] Plaintiff's brief also states, "By finding that the Plaintiff's retinopathy and retinal detachments were 'severe,' the ALJ determined that Plaintiff's depression had limiting effects on her ability to perform basic work activities." (Doc. 13 at 11.) Plaintiff then cites regulation 20 C.F.R. § 404.1545 for the premise that the ALJ must "first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. 404.1545. Plaintiff cites no specific findings or evidence related to Plaintiff's non-severe adjustment disorder with depressed mood. At the end of the same paragraph Plaintiff returns to an argument that "in light of the ALJ's failure to include the specific limitations of Plaintiff's vision, his decision cannot be upheld." Plaintiff fails to allege any specific mental limitations or supporting evidence that the ALJ failed to consider or include.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D.Mich. Mar. 9, 2010)("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.")(citations omitted).  Therefore, an argument related to mental limitations is waived. Plaintiff's general and undeveloped reference to mental limitations in what is otherwise an argument based on visual limitations may indeed be an editing error in Plaintiff's brief. (Doc. 13 at 12-13.)

supported by substantial evidence. Therefore, the ALJ did not err in failing to include further limitations in the RFC.

Plaintiff testified that her glaucoma medication causes sensitivity to light. (Tr. 38.) Although eyestrain was noted, the record does not show reports of light sensitivity and on exam, Plaintiff's pupils were reactive to light. (Tr. 198, 216.) The ALJ considered Plaintiff's testimony and included an RFC limitation to a work environment with lighting no more extreme than an office setting. (Tr. 21.) This limitation is consistent with Plaintiff's ability to drive a car during the day, attend classes in a community college environment, and work in a McDonald's restaurant.

The ALJ also accounted for Plaintiff's decrease in peripheral vision by limiting her exposure to ladders, ropes, scaffolds, heights, machinery and shifting terrain. (Tr. 21.) A single field analysis of Plaintiff's left eye showed results outside of normal limits. The ALJ accounted for the increased limitations in Plaintiff's left eye vision by limiting her to work where stereoscopic vision is not required. (Tr. 21.) Finally, the ALJ limited Plaintiff to performing a range of light work and no production-like standards such as one would find in assembly line or conveyor belt work. (Tr. 21.) The classification of "light" work limits Plaintiff to lifting no more than twenty pounds. The ALJ's RFC was supported by substantial evidence in the record.

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *See Casey*, 987 F.2d at 1233 (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989)). "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding." *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407, 1987 WL 36575 at *2 (6th Cir. Jan. 6, 1987).

The ALJ's decision shows that he properly considered the entire record and the RFC is supported by substantial evidence. The ALJ incorporated each of the RFC limitations in his hypothetical question to the VE. (Tr. 21, 47-48.)

**3.      Whether the ALJ's Finding at Step Four is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's step four determination is not supported by substantial evidence because the ALJ "failed to evaluate whether Plaintiff could return to her past relevant work as a payroll clerk as she actually performed it, not as the position is generally performed." (Doc. 13 at 14.) Plaintiff argues that during the hearing, the ALJ did not question Plaintiff about her past relevant work and he did not ask the VE about specific job duties as they were actually performed by Plaintiff. (Doc. 13 at 14.)

The ALJ determined at step four of the sequential analysis that Plaintiff can perform her past relevant work as a data entry clerk.   Past relevant work is defined as work that "was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). There is no challenge to the classification of Plaintiff's work as a data entry clerk[5] as "past relevant work."

The regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 404.1560(b).  20 C.F.R. § 404.1520(f) provides

> Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work. See paragraph (h) of this section and §

---

[5]In her brief, Plaintiff referred to this job as a payroll clerk, however, by Plaintiff's description and report, payroll clerk has not otherwise been identified as the title for this position.

404.1560(b). If you can still do this kind of work, we will find that you are not disabled. 20 C.F.R. § 404.1520(f).

"'[B]y referring to the claimant's ability to perform a 'kind' of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520 at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

Contrary to Plaintiff's argument, the ALJ's determination that Plaintiff can perform her past relevant work may be based upon "either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy." SSR 82-62; *see also* SSR 82-61. Social Security Ruling 82-61 states that

> A properly completed SSA-3369- F6, Vocational Report, may be sufficient to furnish information about past work. . . . For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert. SSR 82-61.

In the instant case, the ALJ made a specific finding that Plaintiff can perform the duties of a data entry clerk, both as generally performed and as she actually performed them. (Tr. 23.) The ALJ relied on VE testimony that the data entry clerk position was a semi-skilled job with a sedentary level physical demand. (Tr. 47.) This is consistent with Plaintiff's Work History Report in which Plaintiff described her "data entry/key punch" work as including entering data, clerical work, and supervising. She reported the use of machines, tools, equipment, technical knowledge and skills and performing duties such as writing or completing reports.  (Tr. 151-54.) She responded affirmatively to whether she had to "[w]rite, type or handle small objects." (Tr. 154.)

She reported that the heaviest weight she lifted was less than 10 pounds and that she frequently lifted less than 10 pounds. (*Id.*)

Again, Plaintiff has not identified inconsistencies between the record evidence regarding Plaintiff's data entry work, and the testimony of the VE and findings of the ALJ. Plaintiff appears to rely solely on her allegation that she cannot use her eyes for a long period of time without fatigue and pain and that she would be unable to use a computer for "a good portion of the day because of her vision problem." (Doc. 13 at 15.) As set forth above, however, the ALJ did not find this allegation supported by the evidence and the ALJ's credibility determination and resulting RFC were supported by substantial evidence. The ALJ's finding at step four is supported by VE testimony regarding the data entry clerk position. Even if, as Plaintiff argues, the ALJ did not fully develop the record with respect to Plaintiff's data entry work as actually performed, the error is harmless where the ALJ also found that Plaintiff can perform such work as it is generally performed. (Tr. 23.)

The ALJ's RFC is supported by substantial evidence. The ALJ's hypothetical question to the VE incorporated Plaintiff's limitations that the ALJ found credible. The VE's testimony is substantial evidence supporting the ALJ's finding that Plaintiff could perform her past relevant work as a data entry clerk as actually and generally performed. The ALJ's decision at step four is based on substantial evidence.

### G.    Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (doc. 15) should be granted, that of Plaintiff (doc. 13) denied and the decision of the Commissioner affirmed.

18

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
United States Magistrate Judge

Dated: August 29, 2014